## CIRCUIT COURT OF THE CITY OF RICHMOND

Vera Brooks Walters

v.

Thomas B. Leecost

November 2, 1992

Case No. LS-4407–2

BY JUDGE T. J. MARKOW

This case comes before the court on a motion to set aside the jury verdict and enter judgment for the defendant. The facts are as follows.

Ms. Walters was scheduled to have foot surgery performed by Dr. Leecost on June 30, 1989. Ms. Walters had signed a consent form on April 4, 1989, which referred to the removal of an ingrown nail and the correction of the fourth and fifth toes of her left foot. It appears that prior to the day of the operation, these were the only procedures discussed between the parties, that is, the removal of an ingrown nail from the first toe and the correction of a deformity in the fourth and fifth toes.

At the hospital and before her surgery, Ms. Walters signed on June 29, 1989, another consent form, this one referring to "bunions left foot" and "removal of a deformed bone in the foot." There was conflicting testimony between the parties as to whether, on June 30, 1989, immediately prior to the surgery, Ms. Walters orally requested Dr. Leecost to remove a bunion from the first toe of her left foot. It is that procedure, on the first toe, which Dr. Leecost actually performed, and which Ms. Walters claims constituted a battery. The case was tried to a jury on August 10, 1992, and the jury returned a verdict for Ms. Walters in the amount of $5,000.00. By the instant motion, Dr. Leecost seeks to set aside that verdict.

A trial court may set aside a jury verdict and enter final judgment only when the verdict is plainly wrong or without credible evidence to support it. A jury weighs the testimony of witnesses and resolves conflicting evidence. If reasonable minds can differ in the conclusions of fact to be drawn from the evidence, a jury is the proper tribunal to draw the conclusion. A trial judge cannot substitute his conclusion for that of a jury merely because he would have voted differently had he been on the jury.

*Fobbs v. Webb Building Ltd. Partnership*, 232 Va. 227 (1986) (citation omitted). Thus, the burden on the defendant is a heavy one, to show that the jury verdict had no credible evidence to support it. In this inquiry, plaintiff, as the prevailing party, is entitled to the view of the evidence most favorable to her and all reasonable inferences to be drawn therefrom.

Ms. Walters signed a consent form prior to the performance of the surgery by Dr. Leecost. This form is the linchpin of defendant's argument. Since the form specifies that Ms. Walters was consenting to a "bunionectomy," there was no evidence that Ms. Walters revoked that consent, and such a procedure was indeed performed, defendant contends that there was no basis for the jury verdict. He argues that the consent form must be given conclusive weight, which obviates liability on his part. That somewhat overstates the case.

It is well established that, given the proper factual conditions and circumstances, a patient can maintain against a physician an action based on assault and battery for acts arising out of the physician's professional conduct. The relationship between physician and patient is a consensual one and "[a] surgical operation on the body of a person is a technical battery or trespass unless he or some authorized person consented to it." 61 Am. Jur. 2d *Physicians, Surgeons, Etc.* § 155 (1972). An unauthorized operation is a wrongful and unlawful act for which the surgeon will be liable in damages.

*Pugsley v. Privette*, 220 Va. 892 (1980). While *Pugsley* involved a question of whether consent had been withdrawn, it is instructive in the instant case as well. Mrs. Privette was to have surgery performed by Dr. Pugsley, for which she signed a consent form. Mrs. Privette testified that she had also advised Dr. Pugsley more than once that

she wanted Dr. Hall, chief of surgery, present during the operation. On the morning of the surgery, when Dr. Hall could not be found, Mrs. Privette told Dr. Pugsley she did not want to be put to sleep until he arrived. That was the last thing Mrs. Privette remembered until the surgery was over, during which Dr. Hall was not present. In discussing revocation of consent, the court did not consider the signed consent form in isolation, but rather in conjunction with the surrounding circumstances. The court looked not only to Mrs. Privette's statement about not proceeding without Dr. Hall, made after the form had been signed, but also to the discussions Mrs. Privette had with Dr. Pugsley before signing the form, about wanting Dr. Hall present and making arrangements for that to occur. While the form itself did not indicate that Mrs. Privette's consent was conditioned upon Dr. Hall's being present, the additional evidence colored the interpretation of the consent and placed it in the proper context.

Similarly, in the instant case, Ms. Walters signed a consent form for a bunionectomy. However, the consent form did not specify upon which toes the surgery was to be performed. Additionally, her evidence was that she had not been to the doctor for that problem at all. Therefore, the jury was entitled to consider evidence of prior consultations between the parties. The jury could have reasonably concluded that only the fourth and fifth toes of the left foot, and not the first toe which was actually operated on, were discussed. Dr. Leecost testified that just prior to the surgery, Ms. Walters indicated that she wanted a bunion removed from her first toe; Ms. Walters recalls speaking to Dr. Leecost, but not making any such request. The jury was certainly permitted to accept Ms. Walters' version of the exchange and infer that she had not, in a sedated state, consented to surgery on a toe other than the ones previously discussed in the course of her treatment.

It is true that the consent form referred to the removal of a bunion. But it also referred to the removal of a deformed bone. Admitting evidence as to Ms. Walters' interpretation of that wording, in light of her consultations with Dr. Leecost, does not necessarily change this case from a battery claim into an informed consent claim. It is simply relevant as to the scope of the consent given by Ms. Walters.

In the case of *Woodbury v. Courtney*, 239 Va. 651 (1990), Ms. Woodbury signed a consent form for her doctor to perform a biopsy on her left breast. During the operation, Dr. Courtney performed a partial mastectomy, removing one-quarter of Ms. Woodbury's

breast. Ms. Woodbury alleged that Dr. Courtney's actions constituted a battery because he exceeded the scope of her consent. To counter that claim, Dr. Courtney was prepared to present expert medical testimony that the terms "biopsy" and "partial mastectomy" were synonymous for the same procedure. In light of that evidence, the trial court found that in order to establish her battery cause of action, Ms. Woodbury would have to offer expert testimony to dispute the doctor's assertion that the terms referred to the same procedure. The Supreme Court of Virginia disagreed.

> Woodbury is not required to prove her allegations of battery with expert medical testimony simply because Dr. Courtney intends to use expert medical testimony in his defense. A factual issue was created and the jury should have been allowed to determine the extent of the permission Woodbury granted to Dr. Courtney and whether he exceeded the scope of that permission. If Dr. Courtney exceeded the scope of that permission then he committed a battery. *See Pugsley v. Privette*, 220 Va. 892, 263 S.E.2d 69, 74 (1980).

*Woodbury*, 239 Va. at 654. In *Woodbury*, the plaintiff consented on paper to a biopsy. While the technical medical use of that word may have encompassed the procedure actually performed, Ms. Woodbury's belief as to what she was consenting to was just as relevant. Similarly, in the instant case, Ms. Walters consented on paper to a bunionectomy. Medically speaking that term may have been the name for what was actually performed. But to determine the scope of Ms. Walters' consent, the jury was entitled to give weight to Ms. Walters' understanding of what she was allowing. Her testimony at trial indicated that Dr. Leecost had, on prior occasions, referred to the growth between her fourth and fifth toes as a bunion, and that to her, the word bunionectomy on the consent form simply reflected what she and Dr. Leecost had already discussed. (Tr. at 12, ll. 1–14) Indeed, before providing space to describe the condition being treated, the consent form indicates that the patient is authorizing treatment of "the condition or conditions which appear indicated by the diagnostic studies already performed." (Plaintiff's Exhibit 4) The only evidence of any prior studies was related to the fourth and fifth toes.

Following *Pugsley* and *Woodbury*, a patient's consent form need not be viewed in a vacuum. Examining it in conjunction with the events prior to its completion, as well as the patient's understanding

of what she was consenting to, does not transform the claim from battery to lack of informed consent. The surrounding circumstances are relevant to determine the scope of the patient's consent and ultimately whether the physician exceeded that scope. There was sufficient evidence in the record to support the jury's finding that Ms. Walter's consent did not include the procedure performed by Dr. Leecost on her first toe. Therefore, defendant's motion is overruled and the jury's verdict shall stand.